1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CRAIG A. BUCKINS,                              No.  2:15-cv-1011-EFB

12                    Plaintiff,

13            v.                                      ORDER

14    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security
15
                      Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19    ("Commissioner") denying his applications for a period of disability and Disability Insurance

20    Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

21    Social Security Act.  The parties have filed cross-motions for summary judgment.  For the

22    reasons discussed below, plaintiff's motion for summary judgment is denied and the

23    Commissioner's motion is granted.

24    I.    BACKGROUND

25          Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that he had

26    been disabled since September 1, 2010.  Administrative Record ("AR") 196-208.  Plaintiff's

27    applications were denied initially and upon reconsideration.  *Id.* at 127-130, 134-143.  On July 14,

28    2014, a hearing was held before administrative law judge ("ALJ") Amita B. Tracy.  *Id.* at 45-70.

Plaintiff was represented by counsel at the hearing, at which he and a vocational expert testified. *Id.*

On September 17, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1] *Id.* at 22-38.  The ALJ made the following specific findings:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since September 1, 2010, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

* * *

_____

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(a)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2

3. The claimant has the following severe impairments: obesity, diabetic peripheral neuropathy, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, an affective disorder, possible history of acute ischemic cerebrovascular accident or similar symptoms, and polysubstance abuse (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolding. He can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach in front and laterally with his right upper-extremity. He should not work in an environment requiring exposure to extreme temperatures, vibrations, and workplace hazards. He requires an environment that is very quiet – quiet to moderate noise environments. The claimant retains the ability to engage in simple, repetitive, routine tasks.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

\* \* \*

7. The claimant was born on November 28, 1960, and was forty-nine years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

\* \* \*

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

/////

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2010, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

*Id.* at 24-37.

Plaintiff's request for Appeals Council review was denied on March 30, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II.    LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

/////

1    III.    ANALYSIS

2        Plaintiff argues that the ALJ erred by (1) rejecting his examining physician's opinion

3    without providing legally sufficient reasons, and (2) concluding that there were a sufficient

4    number of jobs in the national economy that plaintiff could perform.  ECF No. 12 at 5-12.

5        A.    The ALJ Properly Evaluated the Medical Opinion Evidence

6        Plaintiff argues that the ALJ erred in rejecting his examining physician's opinion that he

7    needed a cane for walking long distances and on uneven terrain.  ECF No. 12 at 5-8.  The weight

8    given to medical opinions depends in part on whether they are proffered by treating, examining,

9    or non-examining professionals.  *Lester*, 81 F.3d at 834.  Ordinarily, more weight is given to the

10   opinion of a treating professional, who has a greater opportunity to know and observe the patient

11   as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  To evaluate whether

12   an ALJ properly rejected a medical opinion, in addition to considering its source, the court

13   considers whether (1) contradictory opinions are in the record; and (2) clinical findings support

14   the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical

15   professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a

16   contradicted opinion of a treating or examining medical professional may be rejected for "specific

17   and legitimate" reasons that are supported by substantial evidence.  *Id.* at 830.  While a treating

18   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

19   examining professional's opinion (e.g., supported by different independent clinical findings), the

20   ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

21   *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an examining

22   physician relies on the same clinical findings as a treating physician, but differs only in his or her

23   conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  *Orn v.*

24   *Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

25       Plaintiff was evaluated by Dr. Jenna Brimmer, an examining physician.  AR 707-710.  Dr.

26   Brimmer diagnosed plaintiff with history of stroke with right-sided weakness, type 2 diabetes not

27   controlled with symptoms of neuropathy, high blood pressure being medically managed, and high

28   cholesterol being medically managed.  *Id.* at 709.  It was her opinion that plaintiff could stand and

5

1  walk up to six hours, sit without limitation, and lift 20 pounds occasionally and 10 pounds

2  frequently. *Id.* She further opined that plaintiff could occasionally climb, balance, stoop, kneel,

3  crouch, and crawl; occasionally reach with his right upper-extremity; but was limited with

4  working at heights due to a risk of falling. *Id.* at 709-710. It was also Dr. Brimmer's opinion that

5  plaintiff would need a cane for long distances and uneven terrain. *Id.* at 709.

6       The record also contains opinions from two non-examining physicians. Based on his

7  review of plaintiff's medical records, Dr. Lloyd Anderson opined that plaintiff could lift 50

8  pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour

9  workday; sit for about 6 hours in an 8-hour workday; frequently climb ramps and stairs, but never

10  ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. *Id.* at 91-92.

11       Dr. J.R. Saphire, also a non-examining physician, opined that plaintiff could lift 20

12  pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour

13  workday; sit for about 6 hours in an 8-hour workday; frequently climb ramps and stairs, but never

14  ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. *Id.* at 119-

15  120. Dr. Saphire further opined that plaintiff was limited to frequently reaching in front and

16  laterally, and that he should avoid concentrated exposure to extreme temperatures, vibrations and

17  workplace hazards. *Id.* at 120.

18       In assessing plaintiff's RFC, the ALJ adopted significant portions of Drs. Brimmer and.

19  Saphire's opinions. *See id.* at 29. However, the ALJ rejected Dr. Brimmer's opinion that plaintiff

20  would require a cane for long distances and uneven terrain. Plaintiff contends that the ALJ erred

21  in doing so. ECF No. 12 at 5-8. As this opinion was contradicted by the opinions of Dr. Saphire

22  and Dr. Anderson, the ALJ was required to provide a legitimate and specific reason for

23  disregarding this examining opinion. *Lester*, 81 F.3d at 830.

24       In determining that plaintiff did not require the use of a cane, the ALJ found that "there is

25  no probative evidence that the claimant has used a walker or cane with any sort of regularity." *Id.*

26  at 31. The ALJ further stated, "It seems that Dr. Brimmer echoed the claimant's report that he

27  uses a cane but the record is devoid of any use or even possession of a cane or walker since July

28  or August 2011."

1   An ALJ may discount a physician's opinion if it is not supported or is inconsistent with

2   other substantial evidence of record.  *See Orn*, 495 F.3d at 631.  Plaintiff contends that contrary to

3   the ALJ's finding, there is evidence in the record demonstrating that he needed a cane for

4   ambulation.  ECF No. 12 at 7.

5   In July 2011, plaintiff was admitted to the hospital with concerns that he had a stroke.  AR

6   428.  He was diagnosed with possible transient ischemic attack, with no evidence of stroke on

7   magnetic resonance imaging.  *Id*. at 425.  He underwent physical therapy and reported that he

8   could ambulate without a walker.  *Id*. at 426.  At the time of discharge, his symptoms had

9   resolved and plaintiff was informed that he could "either choose to or not choose to use the

10   walker as tolerated."  *Id*.  A psychosocial assessment form, which was completed approximately a

11   week after his discharge, indicates that plaintiff was prescribed a wheelchair, but not a walker or

12   cane.  *Id*. at 622.  The form, however, does not include any clinical findings suggesting that

13   plaintiff was confined to a wheelchair.  *Id*.  Furthermore, there is nothing in the record to suggest

14   that plaintiff's condition worsened after his discharge.  Treatment notes from September 2011

15   reiterated that at the time plaintiff was discharged "his deficits mostly resolved [and] he was left

16   with a mild limp requiring walking with a cane."  *Id*. at 574; *see also id.* at 562.

17   This evidence establishes that plaintiff was prescribed an assistive device for ambulation

18   after his July 2011 hospitalization.  But there is evidence indicating that notwithstanding the

19   prescription, use of such a device proved unnecessary.  Treatment notes from July 2012 reflect

20   that plaintiff continued to have a slow gait with a slight limp.  *Id*. at 507.  As noted by the ALJ,

21   despite this impairment plaintiff reported that he had not used his walker or cane since being

22   discharged from the hospital because "it's embarrassing."  *Id*. at 32, 504.  Thus, plaintiff

23   functioned without a cane from the time of his discharge in late July or August of 2011 to the date

24   of the treatment notation in July 2012.  The fact that he did so is entirely consistent with the

25   functional capacity opinions of Dr. Saphire and Dr. Anderson, neither of which indicated that

26   /////

27   /////

28   /////

7

1  plaintiff required the use of a cane.[2]  This is adequate evidence to support the ALJ's finding that

2  plaintiff did not require the use of a cane.

3      Accordingly, the ALJ gave a specific and legitimate reason for rejecting Dr. Brimmer's

4  opinion in this limited regard.

5      B.  The ALJ's Step-Five Finding is Supported by Substantial Evidence

6      Plaintiff next argues that the ALJ erred at the fifth-step of the sequential evaluation

7  process by concluding that there were a sufficient amount of jobs in the national economy that he

8  could perform.  ECF No. 12 at 9-12.

9      At step five of the sequential evaluation process, the Commissioner bears the burden of

10  showing that the plaintiff has the ability to perform work available in the national economy.

11  *Yuckert*, 482 U.S. at 146 n.5.  To meet this burden, an ALJ may utilize a vocational expert "to

12  testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do;

13  and (2) the availability of such jobs in the national economy."  *Tackett v. Apfel*, 180 F.3d 1094,

14  1101 (9th Cir. 1999).

15      At the hearing, the vocational expert testified that an individual with plaintiff's RFC

16  could perform work as a children's attendant, a housekeeping cleaner, and a ticket taker.  AR at

17  66-67.  The ALJ's relied on this testimony in finding that there are a significant number of jobs in

18  the national economy that plaintiff can perform.  *Id*. at 37.  Plaintiff contends, however, that he

19  cannot perform the positions of housekeeping cleaner and ticket taker because these jobs require

20  frequent to constant reaching, which is precluded by the ALJ's RFC determination limiting

21  plaintiff to occasional reaching in front and laterally with his right upper-extremity.  ECF No. 12

22  at 9-11.  Thus, plaintiff contends that these are not jobs within his functional capacity.  He argues

23  that without the availability of these jobs the ALJ's finding of not disabled cannot be sustained

24  because the vocation expert testified that the remaining job of children's attendant only has 5,104

25  available positions nationally, which plaintiff contends is an insufficient number of jobs.  *Id*. at

26  11-12.

27

28  [2] It is also consistent with the discharge instructions from plaintiff's treating sources that he could "either choose to or not choose to use the walker as tolerated."  AR at 426.

1        Plaintiff is correct that under the Dictionary of Occupational Titles ("DOT") both a

2   housekeeping cleaner and ticket taker require at least frequent reaching.  DOT 323.687-014, 1991

3   WL 672783 (Cleaner, Housekeeping), DOT 211.467-030, 1991 WL 671853 (Ticket Seller).

4   "However, the DOT does not specify that frequent reaching requires the use of both arms."

5   *Powell v. Colvin*, 2013 WL 6797569, * at 4 (C.D. Cal. Dec. 19, 2013) (finding that plaintiff could

6   perform a job requiring frequent reaching despite being limited to occasional reaching with left

7   arm); *see also Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (finding that the vocational

8   expert's testimony that plaintiff could perform work as a ticket seller despite amputation of one

9   arm was not inconsistent with the DOT's requirement of frequent handing and finger for the

10  position because the DOT does not require bilateral dexterity); *Palomares v. Astrue*, F. Supp. 2d

11  906, 920 (N.D. Cal. 2012) (finding that there was no conflict between the DOT and vocational

12  expert's testimony that a person limited in reaching with his left extremity could perform a DOT

13  job requiring constant reaching because "the DOT does not require constant reaching with both

14  arms.").  Here, the ALJ's RFC determination did not include any limitations in reaching with

15  plaintiff's left arm, a finding that plaintiff does not challenge.  AR 29.

16       Furthermore, the vocational expert testified that an individual with plaintiff's RFC,

17  including the limitation to only occasional front and lateral reaching with the right upper

18  extremity, could perform work as a children's attendant, housekeeping cleaner, and ticket taker.

19  *Id*. at 66-67.  Moreover, she stated that her testimony was consistent with the DOT.  *Id*. at 67.

20  Accordingly, the ALJ did not err in finding that plaintiff could perform these jobs

21  notwithstanding the limitation to his right upper extremity.

22       In light of the availability of the jobs addressed by the vocational expert, the court does

23  not reach plaintiff's further argument that it was error to find that he could perform the position of

24  a ticket taker.  Plaintiff argues that this job requires level 3 reasoning, which is precluded by the

25  ALJ's finding that he is limited to simple, repetitive, routine tasks.  ECF No. 12 at 11.  As

26  explained above, that ALJ properly concluded that plaintiff maintained the ability to work as a

27  housekeeping cleaner.  The vocational expert testified that there are more than 137,000

28  housekeeping cleaner jobs available nationally.  AR 66.  This job alone has a sufficient number of

1  positions available in the national economy to support the ALJ's step-five finding.  *Moncada v.*

2  *Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (60,000 national jobs is a significant number); *Moore v.*

3  *Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (testimony that there was 125,000 jobs nationally that

4  plaintiff could perform constituted substantial evidence supporting the ALJ's finding that the

5  plaintiff was not disabled).

6       Accordingly, the ALJ did not err in finding that there were a significant number of jobs in

7  the national economy that plaintiff could perform.

8  IV.   <u>CONCLUSION</u>

9       Accordingly, it is hereby ORDERED that:

10     1.  Plaintiff's motion for summary judgment is denied;

11     2.  The Commissioner's cross-motion for summary judgment is granted; and

12     3.  The Clerk is directed to enter judgment in the Commissioner's favor.

13  DATED:  September 26, 2016.

14

15                      EDMUND F. BRENNAN

                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28